**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
             *Plaintiff-Appellee,*

v.

LEVI JOHNSON, a/k/a Vi,
             *Defendant-Appellant.*

No. 01-4863

UNITED STATES OF AMERICA,
             *Plaintiff-Appellee,*

v.

STOVER STOCKTON, a/k/a Big Ox,
             *Defendant-Appellant.*

No. 02-4007

Appeals from the United States District Court
for the District of Maryland, at Baltimore.
Marvin J. Garbis, District Judge.
(CR-99-352-MJG)

Argued: June 3, 2003

Decided: July 30, 2003

Before MICHAEL, TRAXLER, and KING, Circuit Judges.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Melissa Maynard Moore, OFFICE OF THE FEDERAL
PUBLIC DEFENDER, Baltimore, Maryland; Gary Ticknor, Elkridge,

Maryland, for Appellants. James G. Warwick, Assistant United States Attorney, Baltimore, Maryland, for Appellee. **ON BRIEF:** James Wyda, Federal Public Defender, Gary Christopher, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Baltimore, Maryland, for Appellants. Thomas M. DiBiagio, United States Attorney, Steven H. Levin, Assistant United States Attorney, Andrea L. Smith, Assistant United States Attorney, Baltimore, Maryland, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Stover Stockton and Levi Johnson were tried together and convicted by a jury of conspiracy to sell and distribute heroin. They appeal their convictions and sentences, raising several issues. Because we find no reversible error, we affirm.

I.

Stover Stockton and Levi Johnson were indicted for conspiracy to sell and distribute heroin in Baltimore, Maryland, between 1994 and April 2000. They were also indicted for conspiracy to murder a U.S. District Judge and a U.S. Attorney. Their two co-defendants pled guilty before trial to the drug conspiracy count. During a month-long jury trial in the District of Maryland, the government introduced evidence about local drug dealers' use of vials with different colored caps as a branding device of sorts. Stockton primarily sold heroin known as "red and white." Johnson sold "yellow and white." However, there is evidence, discussed below, that Stockton and Johnson worked together at times. Both Stockton and Johnson were convicted of the drug conspiracy, but the jury was unable to reach a verdict on the two murder conspiracy charges.

At sentencing the district court concluded that Stockton was subject to a two-level increase in his offense level for firearm possession, U.S.S.G. § 2D1.1(b)(1), a two-level increase for causing significant physical injury, § 5K2.2, and a two-level increase for his role in the conspiracy, § 3B1.1(c). Given Stockton's base offense level of 36, *see* § 2D1.1(a)(3); § 2D1.1(c)(2), his overall offense level was 42. At this offense level the sentencing range is 360 months to life regardless of the defendant's criminal history category; as a result, the district court declined to resolve a dispute over Stockton's criminal history. The court sentenced Stockton to 390 months.

Johnson began with the same base offense level, 36. § 2D1.1(c)(2). He also received a two-level increase for firearm possession. § 2D1.1(b)(1). Based on evidence that Johnson committed a murder as part of the conspiracy, the court raised his offense level to 43, pursuant to § 2D1.1(d)(1)'s cross reference to § 2A1.1 for drug crimes involving murder. Finally, the court added a four-level increase because of Johnson's leadership role in the conspiracy. § 3B1.1(a). His overall offense level, therefore, was 47. Because the minimum sentence for this offense level is life, regardless of the defendant's criminal history category, the court also declined to make a specific finding about Johnson's criminal history. As required by the guidelines, the court sentenced Johnson to life in prison.

## II.

Stockton raises several challenges to both his conviction and sentence. We will address each in turn.

## A.

Stockton first argues that although he was a member of a drug conspiracy, he was not a member of the one charged in the indictment and found to exist by the jury. He says he was part of a conspiracy to sell drugs under the "red and white" brand, while Johnson was selling drugs under the "yellow and white" brand. For this reason, he claims that the government's evidence was insufficient to connect him to the primary yellow and white conspiracy.

The government must prove that each defendant was connected to the conspiracy beyond a reasonable doubt, but the connection does not need to be extensive. *See United States v. Strickland*, 245 F.3d 368, 385 (4th Cir. 2001); *United States v. Wilson*, 135 F.3d 291, 306 (4th Cir. 1998); *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996) (en banc). The record shows that Stockton and Johnson were seen together in a house with drug paraphernalia, that they were seen together on a street corner where members of the yellow and white conspiracy were selling drugs, that they sold drugs on the same corner, that they pooled their money to buy drugs in New York, and that they worked together to mete out discipline. This is sufficient evidence from which a reasonable jury could find that Stockton was in a drug conspiracy with Levi Johnson. *See, e.g.*, *United States v. Banks*, 10 F.3d 1044, 1055-56 (4th Cir. 1993).

B.

Stockton next argues that the district court erred by refusing to give his requested jury instruction on multiple conspiracies. We review jury instructions to determine whether any errors in instruction are prejudicial based on the record as a whole. *United States v. Ellis*, 121 F.3d 908, 923 (4th Cir. 1997). The judgment is not subject to reversal if, given the full context of the trial, "the charge was not misleading and contained an adequate statement of the law to guide the jury's determination." *United States v. United Med. & Surgical Supply Corp.*, 989 F.2d 1390, 1406-07 (4th Cir. 1993) (quoting *United States v. Park*, 421 U.S. 658, 675 (1975)). A trial court's refusal to give a defendant's requested instruction is reversible error if the instruction: (1) was correct; (2) was not substantially addressed by the court's instructions; and (3) dealt with an issue "so important[ ] that failure to give the requested instruction seriously impaired the defendant's ability to conduct his defense." *United States v. Lewis*, 53 F.3d 29, 32 (4th Cir. 1995) (internal quotation marks omitted).

Stockton requested a specific instruction on multiple conspiracies. The district court instructed the jury on multiple conspiracies, but used language different than that requested by Stockton. As part of its instruction the court said that the jury could find Stockton guilty of conspiracy if the evidence established beyond a reasonable doubt that "at some time, even if just one time, [he] knowingly and intentionally

joined with others to accomplish the objective of selling yellow and white brand heroin." As noted above, the circumstances linking Stockton to the conspiracy need not have been extensive. *See, e.g.,* *Strickland*, 245 F.3d at 385. Moreover, the evidence in this case demonstrated that Stockton cooperated with Johnson on many occasions. The court's conspiracy instructions, therefore, were not prejudicial in light of the record as a whole. *See Ellis*, 121 F.3d at 923.

### C.

Stockton also claims that the district court erred in admitting evidence of a shooting that was arguably outside the time frame of the conspiracy. The court allowed testimony by another prominent member of the conspiracy, Hayes, that he shot someone named Jamal on January 1, 1994. This shooting was within the time frame of the conspiracy since the conspiracy was alleged to have begun in 1994. Hayes went on to testify, however, that the reason he shot Jamal was that Jamal was going to testify against Stockton about a shooting that happened well before the 1994 start of the conspiracy. Stockton says the testimony about the reason for the shooting was evidence of a prior bad act that should have been excluded because it was substantially more prejudicial than probative.

We review the district court's evidentiary ruling for abuse of discretion. *United States v. Hernandez*, 975 F.2d 1035, 1038 (4th Cir. 1992). Moreover, any error is subject to a harmless error analysis; we must consider whether "it is probable that the error could have affected the verdict reached by the particular jury in the particular circumstances of the trial." *Id.* at 1041 (internal quotation marks omitted). The admissible evidence introduced about Stockton's drug activities and his acts of violence, including his involvement in the planning of a murder, was extensive. As a result, even if the district court erred in admitting evidence connecting Stockton to a shooting that occurred before the start of the conspiracy, we conclude that it is improbable that this item of evidence affected the jury's verdict.

### D.

Stockton also argues that the district court erred in allowing the prosecution to refresh a witness's recollection on two occasions. In

neither instance, Stockton argues, had the witness forgotten the answer to the question. Both instances involved the prosecution's questioning of Azure Johnson.

First, the prosecutor asked Azure Johnson about the events surrounding threats Levi Johnson made against Azure's boyfriend. The prosecutor asked Azure whom she had seen in the car with Levi Johnson when he made the threats. Azure Johnson testified that she was "not sure" because the car's windows were tinted and she therefore could only see Levi Johnson. The court allowed the prosecution to "refresh" her memory, and she then testified that three other people, including Stockton, were in the car with Levi Johnson when he was discussing threats to assault her boyfriend.

A witness's recollection may be refreshed when she has forgotten something, but her memory cannot be refreshed about something she could not have known or seen. *Cf. United States v. Morlang*, 531 F.2d 183, 191 (4th Cir. 1975) (requiring that the witness's recollection be exhausted before it is refreshed). Here, Azure Johnson testified that she could not see who was in the car, not that she did not remember who was in the car. However, even if permitting the prosecutor to refresh her recollection was an abuse of the district court's discretion, it was not prejudicial and therefore not reversible error. *Cf. United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 235 (1940). As noted above, other evidence links Johnson and Stockton together and suggests that they worked together to commit acts of violence. In light of this other evidence, Azure Johnson's ultimate testimony that Stockton was in the car with Levi Johnson when he threatened her boyfriend is unlikely to have affected the verdict. *Hernandez*, 975 F.2d at 1041.

Second, Stockton claims as error another line of questioning involving Azure Johnson. She initially testified that she had never had any interaction with Stockton. A few minutes later, however, the prosecution asked her if she recalled any interactions with Stockton. Without waiting for her to respond (and with the court's permission), the prosecution began to refresh her recollection. Stockton again argues that her memory was not sufficiently exhausted before the prosecutor began to refresh her recollection. The context of the first question, however, is unclear and may have been understood by

Azure Johnson and the court to refer only to whether Azure had inter-acted with Stockton at a particular time. The district court, with a closer view of the events at trial, had a better understanding of the witness's and the prosecution's meanings and whether the witness appeared to have exhausted her recollection of events. We cannot say, therefore, that the district court abused its discretion by allowing the prosecution to refresh Azure's memory during a separate, if related, line of questioning about Stockton.

E.

We turn next to Stockton's challenges to his sentence. We review the district court's factual findings at sentencing for clear error, and we review its legal interpretation of the Sentencing Guidelines de novo. *United States v. Dawkins*, 202 F.3d 711, 714 (4th Cir. 2000).

1.

Stockton argues that the court failed to conduct the individualized assessment required to determine the quantity of drugs attributable to him at sentencing. *See United States v. Irvin*, 2 F.3d 72, 78 (4th Cir. 1993). The sentencing guidelines provide that a defendant who is part of joint criminal activity is responsible for "all reasonably foreseeable acts and omissions" of the activity. U.S.S.G. § 1B1.3(a)(1)(B). The commentary explains that the defendant is responsible for the quantity of drugs "with which he was directly involved" and "all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook." U.S.S.G. § 1B1.3 cmt. n.2. This means that the district court must find the quantity of drugs that was a foreseeable part of the conspiracy (to the defendant) and must find that the conduct of others involving this quantity of drugs furthered the activity the defendant agreed to undertake. *Banks*, 10 F.3d at 1056-57.

The district court was quite clear on the findings it was required to make, and it made the requisite findings for Stockton. The court clearly found that the full quantity of drugs was foreseeable to Stock-ton. J.A. 1791 (noting that Stockton was "well aware of the full scope of the enterprise which he joined and assisted"). The court also found that the conduct of other participants was in furtherance of the joint

criminal activity to which Stockton consented. *See id.* (finding that Stockton was "intimately involved with the operation"); *see also* J.A. 1788 ("Stockton affirmatively acted with, and as part of, the 'Yellow and White' operation.") The district court therefore made the appropriate findings. Moreover, the court did so after fully considering Stockton's claim that he was a member of a separate conspiracy. The court rejected this claim, finding that Stockton was significantly involved in the yellow and white conspiracy. We cannot say that these findings are clearly erroneous. *See Banks*, 10 F.3d at 1057.

2.

Stockton argues that the district court erred in giving him a two-level enhancement pursuant to U.S.S.G. § 3B1.1(c) for having a leadership role. The district court found that Stockton did not have a leadership role in the overall conspiracy, but found that he did have a leadership role in a "subsidiary related operation." At the government's request, the court later explained this seemingly contradictory finding, analogizing Stockton's group to a corporate subsidiary under the same umbrella as the primary yellow and white group. The court thus found that Stockton was in fact a leader, but a leader of a subset of the overall conspiracy. These findings by the district court are not clearly erroneous. *See Banks*, 10 F.3d at 1057.

3.

Finally, Stockton argues that he should have received a downward adjustment under § 3B1.2 for having only a minor role in the conspiracy. The district court swiftly rejected this contention, finding that Stockton "was a significant participant" in the conspiracy. To qualify for a minor role adjustment, Stockton was required to show that he was "substantially less culpable than the average participant." U.S.S.G. § 3B1.2 cmt. n.3. Stockton presented no evidence to satisfy this requirement. The district court's finding that Stockton was a significant participant in the conspiracy is not clearly erroneous. *See Banks*, 10 F.3d at 1057.

III.

Levi Johnson appeals his conviction and sentence on two grounds. First, he argues that his trial should have been severed from that of

Stover Stockton. Second, he says that he should not have received the cross-referenced sentence enhancement for murder.

## A.

We first address the district court's denial of Johnson's motion for severance. We review the denial of a motion to sever under Rule 14 for abuse of discretion. *United States v. Najjar*, 300 F.3d 466, 473 (4th Cir. 2002). Joinder is favored in conspiracy cases. *United States v. Tedder*, 801 F.2d 1437, 1450 (4th Cir. 1986). To demonstrate that the district court erred in denying his motion for severance, Johnson must show actual prejudice from having his case tried with Stockton's. *Najjar*, 300 F.3d at 473. Johnson, however, points to no actual prejudice. He provides no reason for us to believe that he would not have been convicted of a drug conspiracy if he had been tried separately from Stockton. We conclude, therefore, that the district court did not abuse its discretion in denying Johnson's motion for severance.

## B.

Lastly, we consider Johnson's argument that the cross-reference to murder raised his sentence so much that he is being unfairly punished for a crime of which he was not convicted. His "real complaint is that he was, in effect, tried and sentenced for first degree murder without the benefit of a jury." *United States v. Carter*, 300 F.3d 415, 427 (4th Cir. 2002) (internal quotation marks omitted); Appellants' Br. at 54 (quoting *Carter*). If Johnson is correct, this would be a violation of due process.

We have said, however, that cross-references in the Sentencing Guidelines do not raise due process problems. *See, e.g.*, *Carter*, 300 F.3d at 427 (noting that "this method of 'real offense' sentencing does not offend the Constitution") (internal quotation marks omitted). Moreover, the Supreme Court has allowed sentencing enhancements based on activity that formed the basis for charges of which the defendant was actually acquitted. *United States v. Watts*, 519 U.S. 148, 153-54 (1997). And while the Supreme Court has noted that in some cases the enhancement might so dramatically increase the sentence that some additional protections might be warranted, *see Watts*, 519

U.S. at 156-57, this is not such a case. The district court determined at sentencing that even without the murder cross-reference, Johnson's offense level would have been 44. That offense level also carries a mandatory sentence of life imprisonment. We therefore find no due process violation in Johnson's case from the sentence enhancement pursuant to the murder cross-reference.

## IV.

For the foregoing reasons, we affirm the convictions and sentences of Stockton and Johnson.

*AFFIRMED*